## Commonwealth v. Brussels

*Raymond R. Start,* District Attorney, for Commonwealth.

*Harry J. Martin, Jr.,* for defendant.

DIGGINS, J., July 3, 1959.—Defendant was arrested, charged with passing a bus owned by a public utility corporation, but at the time being solely used to transport school children. The alleged violation occurred at the intersection of Amosland Road and MacDade Boulevard, a very busy intersection in Holmes, Delaware County, about 3:40 p.m. The bus was stopped at the intersection headed west and defendant was driving east. The intersection at the time was guarded by Officer Bernard Dougherty on school crossing duty. Defendant was found guilty by the justice of the peace and fined $25 and costs under section 1017.1 (a) of The Vehicle Code of May 1, 1929, P. L. 905, as amended, 75 PS §592.2. An appeal was taken to this court from the summary conviction.

Admittedly, the bus was not painted yellow, but carried a sign with nine-inch letters in the regular destination sign receptacle over the windshield and carried a similar sign across the rear, both of which signs said "School Bus". Defendant contends that he did not recognize the vehicle as a school bus because of the

meagerness of the identification and further contends that he cannot be guilty of violation of section 1017.1 unless the school bus conforms to the provisions of section 828 of The Vehicle Code, 75 PS §436.

The Vehicle Code describes a school bus and defendant relies heavily on the provision which says:

"That said school bus shall not include motor buses operated by common carriers holding a certificate of the Public Utility Commission, who also operate such motor buses over routes approved by such commission": 75 PS §436.

However, by the very words of this section of The Vehicle Code, the provisions relied on by defendant apply only to that particular section which has to do with the safety regulations. The legislature recognized that in addition to the regular yellow school buses, school districts would use supplemental transportation supplied by public utility operators in the form of regular buses used for other purposes at other times and as to these the same section of The Vehicle Code provides:

"That such buses comply with the safety regulations of that commission and the State Council of Education of Pennsylvania": 75 PS §436.

Clearly here there was no intention on the part of the legislature to permit only the regular yellow school buses to be used for the transportation of school children, and just as clearly, there was no intention on the part of the legislature to make any distinction between the two types of buses in regard to passing when loading or unloading school children. This is made an offense under section 1017.1 of The Vehicle Code, 75 PS §592.2, and here the act says:

"(a) On highways having roadways not divided by safety islands or physical traffic separation installation, the driver of any vehicle approaching or overtaking a school bus conforming to the requirements of this

act, which is being used solely for the transportation of children to or from school and which has stopped for the purpose of receiving or discharging any school child, shall stop his vehicle not less than ten feet from the school bus and keep his vehicle stationary until any child has entered the bus or has alighted and reached the side of the highway."

We are of the opinion that the bus in question, carrying the signs as specified here, was being used solely for the transportation of children to and from school, and conformed to the requirements of this act, which in this case was to comply with the safety regulations of the commission and the State Council of Education of the Commonwealth of Pennsylvania.

It was apparent to us at the hearing that the public utility buses used mornings and afternoons solely for the purpose of transporting school children are not as distinctive as the yellow school buses used primarily for school purposes, and that an automobile driver might much more readily not recognize such a vehicle, particularly under the conditions surrounding this case as distinguished from such a bus so marked on a country road, and we further recognize that there would be less chance of a driver not noticing the designating signs when approaching from the rear, but the act was passed for the purpose of safeguarding the lives of the children, and difficult as it may be, it is the duty of the driver to stop.

We think and we stated at the time of the hearing that more distinctive markings can be provided for the public utility buses when they are being used solely for the transportation of school children and that if the legislature where to require more distinctive markings on such buses, the safety features of the act would be enhanced and fewer of our citizens would inadvertently endanger the lives of school children by passing buses as was done here, and to help in this regard, we

directed the district attorney to notify the local bus companies and the school districts to provide larger and more distinctive markings for the public utility buses.

. However, we felt that The Vehicle Code makes it a violation to pass this type of bus engaged in discharging or picking up school children and to have found this driver not guilty because of the lack of substantial negligence, would endanger the whole system of transporting school children as presently used by urban and suburban school districts and therefore we found defendant guilty as charged.

*Order*

And now, to wit, July 3, 1959, defendant is found guilty as charged.